# Third District Court of Appeal

## State of Florida

Opinion filed December 20, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D14-3072 & 3D14-3110
Lower Tribunal No. 13-20190

_____

**Steven Bateman,**
Appellant/Cross-Appellee,

vs.

**The State of Florida,**
Appellee/Cross-Appellant.

Appeals from the Circuit Court for Miami-Dade County, Robert J. Luck, Judge.

Kuehne Davis Law, P.A. and Benedict P. Kuehne and Michael T. Davis, for appellant/cross-appellee.

Pamela Jo Bondi, Attorney General, and Jonathan Tanoos, Assistant Attorney General, for appellee/cross-appellant.

Before SUAREZ, EMAS, and LOGUE, JJ.

SUAREZ, J.

Steven Bateman ("Bateman"), appeals from a final order denying in part and granting in part his motion for judgment of acquittal. The State of Florida cross-

appeals from that part of the trial court's order granting Bateman's motion for judgment of acquittal on Count 1. We affirm in all respects.

Bateman was the subject of a grand jury indictment which arose out of a Miami-Dade County ethics investigation into his actions while Mayor of Homestead. Bateman was investigated for attempting to persuade Miami-Dade County to approve and expedite the permitting process for a new pumping station in Homestead without disclosing that he was being paid by a private company that wanted the permitting expedited. The five-count grand jury indictment charged Bateman with unlawful compensation or reward for official behavior by a public servant, unlawful compensation for exerting influence, exploitation of his official position, acquiring a financial interest in conflict with his official position, and illegal lobbying.

The story begins with Community Health of South Florida ("CHI"), a non-profit organization that wished to build a children's crisis center in Homestead. The new building was to be constructed on an empty lot owned by CHI. The new building was required to be connected to one of the City's sewer pump stations. But the pump station adjacent to the CHI-owned lot was over forty years old, had cracks in it, could not properly handle any new connections, and was subject to an EPA moratorium on any new connections. Miami-Dade's Department of Environmental Resources Management ("DERM") would thus not issue a permit until the City upgraded the pump,

despite CHI's securing funding from the County for the crisis center project. Without the permit CHI could not construct the center on the property it owned. The pump station issue had been before the Homestead City Council long before Bateman was hired by CHI, and Homestead had approved money to upgrade the station in 2012. The problem was that the pump station permit approval process through DERM and the County was taking too long and CHI wanted the process expedited so construction could begin.

Testimony at trial was that Bateman, then Mayor of Homestead, contacted CHI, met with its principals and entered into a consulting agreement to act as a private consultant to advise and assist CHI with its expansion and multiple construction projects. After Bateman was hired by CHI, he frequently consulted with the City's public works director to discuss the status of the pump station in his capacity as Mayor of the City of Homestead, but did not disclose he was also acting as a consultant for CHI on that project. Bateman's problems escalated when he arranged and attended a meeting with the Miami-Dade County Mayor and Deputy County Mayor during which he discussed the status of the pumping station and his concern with DERM's delay in approving and issuing the needed permits. He asked the County to expedite the permitting process. Bateman had a follow-up conversation with the Deputy County Mayor on the subject. During those interactions and meetings, Bateman presented himself as appearing in his capacity as Mayor of Homestead and did not disclose his contractual relationship with CHI

or that CHI had an interest in the permitting process being expedited. Furthermore, despite being legally required to do so, Bateman never registered as a lobbyist for CHI. Bateman then billed CHI for eight hours, representing the two meetings with the County Mayor and Deputy Mayor and for meeting with the Homestead city engineer to prepare for the county meeting. Two days later, he billed CHI for six hours representing a phone conference with the County Deputy Mayor and the Homestead city engineer.

Subsequent to the ethics committee's investigation into his actions, the Grand Jury rendered a five-count indictment charging Bateman with Count 1, unlawful compensation for official behavior in violation of section 838.016(1), Florida Statutes (2013); Count 2, unlawful compensation for exerting influence in violation of section 838.016(2), Florida Statutes (2013); Count 3, exploitation of official position in violation of section 125.69, Florida Statutes, (2013), and Miami-Dade County Code 2-11.1(g); Count 4, acquiring a financial interest in conflict with official actions, in violation of section 125.69, Florida Statutes (2013), and Miami-Dade County Code 2-11.1(o); Count 5, illegal lobbying in violation of section 125.69, Florida Statutes, (2013) and Miami-Dade County Code 2-11.1(s). The State dismissed Count 3 (exploitation of official position) and Bateman went to trial on the remaining counts. The jury found him guilty of Count 1 (unlawful compensation for official behavior), Count 2 (unlawful compensation for exerting influence), and Count 5 (illegal lobbying) and acquitted

4

him of count 4 (acquiring a financial interest in conflict with official actions).  On a post-verdict motion for new trial and judgment of acquittal on all counts, the trial court denied Bateman's motion for new trial, granted judgment of acquittal on Count 1 and denied acquittal on Counts 2 and 5.  The State sought rehearing of the acquittal on Count 1, which was denied.  The court sentenced Bateman to twenty-two (22) months on Count 2 and sixty (60) days on Count 5, to run concurrently. Bateman appeals from the final order denying in part and granting in part his motion for judgment of acquittal and the State cross-appeals from that part of the trial court's order granting Bateman's motion for judgment of acquittal on Count 1. We affirm in all respects.

**COUNT 1.**  The State cross-appeals the trial court's grant of judgment of acquittal on Count 1, unlawful compensation or reward for official behavior in violation of section 838.016(1), Florida Statutes (2013).[1]  Our standard for reviewing a motion for judgment of acquittal is de novo.  Reynolds v. State, 934 So. 2d 1128, 1145 (Fla. 2006).

---

[1] Section 838.016(1), Florida Statutes (2013) provides,

> (1) It is unlawful for any person corruptly to give, offer, or promise to any public servant, or, if a public servant, corruptly to request, solicit, accept, or agree to accept, any pecuniary or other benefit not authorized by law, for the past, present, or future performance, nonperformance, or violation of any act or omission which the person believes to have been, or the public servant represents as having been, either within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.

Subsection (1) of this statute makes it unlawful for a public official to corruptly[2] represent that some present or future act is within his or her official authority to accomplish and then agree to perform that act in exchange for pecuniary gain. Bateman asserted in his motion for judgment of acquittal that the State had not presented sufficient evidence that he acted corruptly when he entered into the consulting contract with CHI, and that he represented to CHI that his actions on its behalf were within his official discretion or in performance of a public duty. The trial court in its detailed order granting acquittal of this count examined the evidence presented, thoroughly parsed the statute, and delineated exactly what the State was required to prove based on section 838.016(1) and the Florida Standard Jury Instruction (Criminal) 19.4.

In granting acquittal, the trial court determined that the State did not present evidence such that a rational trier of fact could find, beyond a reasonable doubt, that Bateman represented to CHI that obtaining the necessary permit was within his official discretion or public duty to perform, or that there was any evidence from which the jury could reasonably conclude that Bateman represented that he would "sell his vote or twist the City staff's arm to approve the water pump." In other words, there was no evidence from which a reasonable trier of fact could determine that Bateman represented to CHI that obtaining the permit was within

---

[2] In 2013, section 838.014(4) defined "corruptly" or "with corrupt intent" to mean "acting knowingly and dishonestly for a wrongful purpose."

his power as Mayor to accomplish. We have similarly examined the record and conclude that the State did not present evidence that Bateman's acts, in his capacity as Mayor, were the kind of official discretionary or duty bound acts that fell within the proscriptions of section 838.016(1), i.e., that Bateman represented to CHI that he had the official discretion to approve the pump permitting himself. The trial court's thorough analysis of the statute and our examination of the record evidence supports the trial court's conclusion, and we affirm the trial court's grant of judgment of acquittal on Count 1.

**COUNT 2.** In Count 2, the jury found Bateman guilty of unlawful compensation or reward for exerting influence on another official's behavior, in violation of section 838.016(2), Florida Statutes (2013).[3] Subsection (2) makes it unlawful for one public servant to corruptly accept any pecuniary gain to influence another public servant to perform an act that is within the second public servant's discretion. Bateman argued in his motion for acquittal that the State had not presented evidence that he acted corruptly when he entered into the CHI consulting

---

[3] § 838.016. Unlawful compensation or reward for official behavior

. . .

(2) It is unlawful for any person corruptly to give, offer, or promise to any public servant, or, if a public servant, corruptly to request, solicit, accept, or agree to accept, any pecuniary or other benefit not authorized by law for the past, present, or future exertion of any influence upon or with any other public servant regarding any act or omission which the person believes to have been, or which is represented to him or her as having been, either within the official discretion of the other public servant, in violation of a public duty, or in performance of a public duty.

agreement and that the evidence at trial was not inconsistent with his theory that the CHI consulting agreement was a legitimate contract for Bateman's services to assist CHI in construction projects. In other words, he asserts that there was not competent substantial evidence from which a rational trier of fact could find that he entered into the agreement with CHI with the intent of being compensated by CHI for using his position as Mayor of Homestead to influence the Mayor of Miami-Dade County to expedite the permitting process of the pump station. We disagree.

Upon review of the record we find that the State presented evidence, admittedly circumstantial, from which a rational trier of fact could find beyond a reasonable doubt that Bateman's agreement to accept money from CHI was made with corrupt intent. We agree with the trial court that the timing of the Bateman/CHI consulting agreement, Bateman's qualifications, CHI's approval of his contract, evidence of payment irregularities, Bateman's overbilling, Bateman's failure to disclose his CHI consulting agreement to Miami-Dade officials, his failure to disclose or register as a lobbyist for CHI, and Bateman's billing of CHI for his meetings with Miami-Dade officials where he attempted to persuade the Miami-Dade Mayor to expedite the permitting process for the pump project, among others, showed a corrupt intent in soliciting and accepting the CHI contract. As such, the State presented competent substantial evidence to contradict Bateman's theory. See Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002) ("Generally, an appellate court will not reverse a conviction which is supported by

competent, substantial evidence. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." (citations omitted)). Therefore, we affirm the trial court's denial of Bateman's motion for acquittal of Count 2.

COUNT 5. The trial court properly denied judgment of acquittal on Count 5. That count charged Bateman with violating Miami-Dade ordinance section 2-11.1(s)(2), which provides that "all lobbyists shall register with the Clerk of the Board of County Commissioners within five (5) business days of being retained as a lobbyist or before engaging in any lobbying activities, whichever shall come first." Bateman asserts that he is entitled to acquittal on Count 5 because the documentary and testimonial evidence showed that his consulting agreement with CHI did not include lobbying and that he was not hired to lobby for CHI. Therefore, he argues, as he was not hired as a lobbyist he was not acting as a lobbyist for CHI when he met with the Mayor of Dade County. He cites to the exception in the ordinance excluding "employees of a principal whose normal scope of employment does not include lobbying activities."[4] After a thorough examination of the record on appeal, we agree with the trial court that,

> [E]ven if his consulting agreement with the company did not call for him to lobby, and even if Community Health did not hire Bateman as ~~its "lobbyist,"~~ Bateman was a lobbyist because as Community Health's

[4] Miami-Dade County Ordinance § 2-11.1(s)(1)(b).

9

hired consultant he encouraged county officials to approve and expedite the water pump permit - a priority for Community Health so it could build its Homestead facility. The county ordinance definition of lobbyist is broad, and included what Bateman did here, even if the company did not label him that way.

Bateman further argues that the public servant exclusion of that ordinance applies because he appeared before Miami-Dade County personnel solely in his official capacity as Mayor of the City of Homestead.[5]  The public servant exception applies, however, when the public official appears only in his or her official capacity.  There was competent substantial evidence that Batman did not meet with the Dade County officials to persuade them to expedite the permitting solely in his capacity as Mayor of Homestead.  The evidence showed that, unknown to Miami-Dade County officials, he was also appearing at the meeting on behalf of CHI, which had a great interest in having the permitting process expedited.  He cannot argue that he appeared only as the Mayor of Homestead and only in the City's interest where the evidence showed that he billed CHI and was paid by CHI for his time in attending the meeting and for the follow-up phone calls in which he tried to persuade the County to expedite the permitting process.  As such, there was competent substantial evidence that Bateman did not appear on behalf of the City only in his capacity as Mayor.  As the trial court rightly observed,

---

[5] "Any public officer, employee or appointee who only appears in his or her official capacity shall not be required to register as a lobbyist." Miami-Dade County Ordinance § 2-11.1(s)(3)(a). [emphasis supplied].

10

Bateman billed [CHI], (and was paid), for meeting with the county Mayor and Deputy Mayor about the company's Homestead construction project and "moving [the] permit process forward in reference to [the] sewer tie-in." Bateman also billed for a phone conference, a day later, with the deputy county mayor about moving the Homestead construction project forward. Before and after his meeting, Bateman sent electronic mail messages to Community Health's chief executive updating him about the status of the water pump. At the company's facilities conference, days after his meeting with the county mayor, Bateman gave a recap of his meeting, and said that Homestead was "off the hook," for the sewage problems and he would know the status of the Homestead construction project by the end of the week and would share the news with the group because he was eager to start the groundbreaking. From this evidence, a rational juror could find beyond a reasonable doubt that Bateman was not at county hall "only" as a public official.

There was competent substantial evidence to go to the jury to decide whether CHI retained and paid Bateman to encourage, i.e. lobby for, the County's approval of the permit for the pump station while acting in his official capacity as Mayor of Homestead. "The state is not required to 'rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events." State v. Law, 559 So. 2d 187, 188-89 (Fla. 1989). To be sure,

> The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine. Where the circumstantial evidence contradicts the defendant's theory of innocence, and the inferences pointing to guilt are sufficiently strong, the case should go to the jury. The standard for review of a denial of a motion for judgment of acquittal is not whether in the opinion of the trial judge or of the appellate court the evidence fails to exclude every reasonable hypothesis other than guilt, but rather whether the jury must reasonably so conclude.

11

<u>Perez v. State</u>, 565 So. 2d 743, 744 (Fla. 3d DCA 1990) (citations omitted).  We conclude there was sufficient competent evidence on this record to contradict Bateman's theory of innocence and support the denial of his motion for judgment of acquittal.

Accordingly, we affirm Bateman's conviction on Counts 2 and 5.  We further affirm the trial court's judgment of acquittal on Count 1.

Affirmed.